IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER HOHMAN,

                Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

                Defendant[1].

OPINION and ORDER

21-cv-59-jdp

---

Plaintiff Jennifer Hohman seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding her not disabled under the Social Security Act. She contends that administrative law judge (ALJ) Dean Syrjanen erred by (1) relying on inadequately supported testimony from a vocational expert; (2) inadequately accounting for subjective complaints related to her fibromyalgia; and (3) failing to properly evaluate the findings of a consultative examiner.[2] None of these issues requires remand, so the court will affirm the commissioner's decision.

---

[1] The court has updated the caption in accordance with Fed. R. Civ. P. 25(d).

[2] Hohman also contends that the ALJ's decision was invalid under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). But this court has rejected that argument multiple times. S*ee Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). And Hohman cites no contrary authority from the Seventh Circuit or anywhere else, so it isn't necessary to consider that issue again.

ANALYSIS

Hohman applied for disability insurance benefits and supplemental security income on May 2, 2019, alleging that she had been disabled since April 7, 2018. After the local disability agency denied her applications initially and upon reconsideration, Hohman requested a hearing before an ALJ, which was held telephonically on August 11, 2020, before ALJ Dean Syrjanen. Hohman, who was represented by counsel, testified, as did Thomas Heiman, a neutral vocational expert. After the hearing, ALJ Syrjanen determined that Hohman suffered from the severe impairments of fibromyalgia, obesity, post-traumatic stress disorder, depression, and anxiety. R. 16.[3] He concluded that she had the residual functional capacity (RFC) to perform light work with a number of postural limitations (*e.g.* occasionally stooping, kneeling, crouching, or crawling) and in which she could perform tasks independently with no more than occasional interaction with supervisors, coworkers, and the public. R. 18–19. Relying on Heiman's testimony, the ALJ found that Hohman wasn't disabled because she could work as a photocopy machine operator, small products assembler, or a mail clerk, positions that he determined were sufficiently available in the national economy. R. 26.

This court must uphold the commissioner's decision to deny benefits "if it applies the correct legal standard and is supported by substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). The "substantial evidence" standard is deferential, requiring only that the ALJ base his decision on relevant evidence that a reasonable person could find sufficient to support the decision. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). In

---

[3] Record cites are to the administrative transcript, located at Dkt. 7.

other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" to deny benefits. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

**A. Vocational expert testimony**

If a claimant is unable to work in her previous occupations, the commissioner bears the burden of showing that the claimant can work in another occupation that "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In determining that such occupations were available to Hohman, the ALJ relied on the testimony of Heiman, the vocational expert. Hohman contends that the ALJ erred in doing so because Heiman's job-number estimates weren't calculated by a reliable method. The court disagrees.

A vocational expert's job-number estimates must be "the product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). This isn't an exacting standard, because it's impossible to avoid some amount of uncertainty in developing such estimates. *Id.* An expert can support his estimates by "drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs." *Id.* at 970.

In the hearing, Heiman explained how he arrived at his job-number estimates. R. 57–61. Addressing the job of mail clerk, Heiman explained that the Standard Occupations Classification (SOC) code containing the mail clerk job had an estimated 85,800 jobs in total, according to the most recent estimates compiled by the Department of Labor and Bureau of Labor Statistics. R. 57–58. But these job numbers included "14 different DOT [jobs,]" including mail clerk and mail machine operators. R. 58. So Heiman then made a "weighted estimate" to estimate what fraction of the 85,800 total jobs were mail clerk jobs. *Id*. He did this by drawing on his experience as a vocational rehabilitation counselor, which included

3

talking to employers and colleagues about labor market trends and variations, learning about the kinds of jobs available in the labor market, and placing workers into these positions. R. 59–61. This is precisely the type of support that *Chavez* describes as sufficient, and the ALJ was justified in relying on the expert's job-number estimates. *Accord Sok v. Kijakazi,* No. 20-CV-489-WMC, 2021 WL 4350566, at *4 (W.D. Wis. Sept. 24, 2021) (where VE "referenced sources commonly used in social security matters," did not employ equal distribution method "mechanically," and "drew on his many years of experience and generally strong credentials to support his estimates," ALJ properly overruled plaintiff's objection to the VE's testimony); *Bauernfeind v. Kijakazi*, No. 20-CV-495-BBC, 2021 WL 4260783, at *7 (W.D. Wis. Sept. 20, 2021) (upholding step five determination where vocational expert did not "accept blindly" the Bureau of Labor's numbers or rely on faulty "equal distribution" method but explained that his estimates were drawn from his 30 years' experience in placing individuals in jobs and knowledge of the labor market gained from that experience); *Kenealy v. Saul*, No. 19-CV-40-JDP, 2019 WL 6463840, at *6 (W.D. Wis. Dec. 2, 2019) (vocational expert's job numbers were sufficiently reliable where she "considered job-number data from JobBrowser Pro. . . . She then adjusted these numbers based on her experience as a vocational rehabilitation counselor in talking to employers and in placing workers into these positions"). So Hohman has not shown that Heiman's job-market estimates were unreliable and is not entitled to remand on this basis.

## B.  Fibromyalgia

Hohman acknowledges that the ALJ found fibromyalgia to be one of her severe impairments, but she says that he erred by failing to "adequately address the subjective nature of fibromyalgia." Her argument is somewhat hard to follow, but the court understands Hohman to be arguing that, given that there are few objective manifestations of fibromyalgia, the ALJ

erred in emphasizing the lack of objective evidence as a reason to discount her subjective complaints of pain. *See Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment"); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (ALJ may not reject claimant's reports of pain from fibromyalgia solely because there is no objective medical evidence supporting it).

This argument is not persuasive for two key reasons. First, the Seventh Circuit has clarified that, although an ALJ cannot ignore a diagnosis of fibromyalgia based on the lack of objective evidence where the diagnosis is otherwise properly supported by certain findings generally accepted by the American College of Rheumatology (*e.g.*, pain with palpation at 11 or more of 18 tender-point sites, *see* SSR 12-2p), an ALJ *can* consider the objective evidence in determining the severity of the fibromyalgia for purposes of determining RFC. *Gebauer v. Saul*, 801 F. App'x. 404, 410 (7th Cir. 2020). That is what the ALJ did in this case, noting that Hohman's medical records contained few physical exam findings of significance but instead generally showed "good objective findings" such as 5/5 motor strength, normal range of motion, no tenderness or edema and normal muscle tone. R. 21.

Second, the ALJ didn't rely solely on the lack of objective evidence to reject Hohman's subjective complaints. He also pointed out that she was able to work full time for several years with no difficulties after being first diagnosed with fibromyalgia in 2013, her medical records contained few subjective reports of significant pain or physical limitation, and the only treatment she had received for fibromyalgia during the relevant period was medication that also treated her mental impairments. R. 22. This is more than enough to support the ALJ's conclusion that Hohman's subjective complaints were not entirely credible, notwithstanding

5

her fibromyalgia diagnosis. Where, as here, the ALJ's credibility assessment is reasoned and supported, this court may not disturb it. *Grotts v. Kijakazi*, 27 F. 4th 1273, 1279-80 (7th Cir. 2022).

**C.  Consultative Examiner's Report**

Finally, the ALJ did not err in rejecting a statement by Dr. Neil Johnson, a one-time consultative examiner, that "[o]n a good day [Hohman could] stand 5 to 10 minutes and sit 30 minutes." R. 429. In considering a disability application, an ALJ must evaluate the persuasiveness of the medical opinions and prior administrative medical findings in the record, paying most attention to whether the opinion is well-supported and consistent with other evidence in the record.  20 C.F.R. § 404.1520c(a).  And he must explain his rationale in his decision. 20 C.F.R. § 404.1520c(b)(2).

The ALJ satisfied these obligations here.  As an initial matter, the ALJ correctly noted that Johnson appeared to have been simply restating Hohman's subjective complaints rather than offering his own medical assessment, which meant that the ALJ owed the opinion no deference. *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (ALJs need not defer to portion of medical source's opinion based solely on claimant's subjective complaints). Regardless, the ALJ explained that that he would not adopt Johnson's severe limitations on Hohman's ability to sit and stand even if it *were* a medical opinion because there were no treatment records or objective findings to support it. R. 23.

This was an adequate reason to discount Johnson's opinion of Hohman's sitting and standing limitations. The ALJ acknowledged that Johnson observed during his September 2019 medical examination that Hohman had an antalgic gait, trouble squatting and doing tandem walk, some limitations in cervical range of motion, and appeared to be in some discomfort.

6

R. 23, citing R. 427–28. Apart from those limited findings, however, the ALJ noted that Hohman's regular treatment records documented "no physical exam findings of significance," or subjective reports of significant pain or physical limitation. R. 22. Hohman has not pointed to any evidence to refute this conclusion by the ALJ. (She points to some records noting reduced range of motion in the cervical spine and shoulders, but this would have little bearing on her ability to sit and stand.) What's more, the ALJ identified other evidence in the record that suggested Hohman could handle the sitting and standing demands of light work, including: a May 2018 treatment note indicating she had normal range of motion and was in no distress, R. 21, citing R. 617–18; her reported ability to walk her dog every day for 20 to 30 minutes, R. 21, citing R. 625, 418; and a December 2019 treatment record finding normal range of motion, no tenderness or edema, and normal muscle tone, R. 21, citing R. 462–63. Finally, Johnson's opinion was inconsistent with the findings of two state medical consultants, who both concluded that Hohman could stand, walk, and sit a total of six hours in an eight-hour workday. R. 76–78, 121–24.

All of this evidence provides substantial support for the ALJ's decision to give little weight to Johnson's assessment of Hohman's standing and sitting limitations, even though the ALJ may not have cited all of it in his paragraph addressing Johnson's opinion. Reading the ALJ's opinion as a whole, the court is satisfied that the ALJ properly considered Johnson's opinion in light of the regulatory factors and reached a conclusion that is reasonably supported by the record.

CONCLUSION

The ALJ didn't err in rejecting Johnson's restrictive assessment of some of Hohman's abilities or in considering Hohman's fibromyalgia, and he was justified in relying on the vocational expert's testimony. The court will deny Hohman's motion for summary judgment and affirm the commissioner's decision.

ORDER

IT IS ORDERED that Jennifer Hohman's motion for summary judgment, Dkt. 18, is DENIED, and the administrative decision is AFFIRMED. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered August 19, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge